UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CASEY H. SUMMERS, ET AL.                                                    PLAINTIFFS

V.                                              CIVIL ACTION NO. 3:20-CV-266-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, ET AL.                                          DEFENDANTS

ORDER

Defendants seek summary judgment in this 42 U.S.C. § 1983 excessive-force case related to a traffic stop. Mot. [59]. As explained below, their motion is granted in part and denied in part.

I.      Facts and Procedural History

The facts are sharply disputed, but the Court must consider them in the light most favorable to the plaintiffs. On May 17, 2018, Plaintiff Casey Summers and her husband Jonathan Summers loaded their six children—who ranged in age from 5 months to 11 years—into the back of their Mercury Grand Marquis, left their home in Raymond, Mississippi, and headed into Jackson to pick up something to eat. On the return drive, Casey (who was riding in the front passenger seat next to her husband), received a phone call and learned that Hinds County law enforcement officers were at their home looking for Jonathan. At the time, Jonathan was subject to several active misdemeanor warrants as well as a felony warrant for fleeing/alluding.

Around that time, Defendant Hinds County Deputy Jason Pittman spotted the Grand Marquis and informed Defendant Deputy Joel Williams; Williams initiated a traffic stop. After Jonathan pulled over, Deputy Pittman and his ride-along trainee, Defendant Deputy Louis Hall,

joined Williams to assist. Defendant Deputy Tony Taylor was the last to arrive and parked his patrol car in front of the Summerses' parked vehicle.

Deputy Williams approached the driver's side window with his gun drawn, and Deputy Taylor approached Casey's passenger-side window with a drawn taser. Two of the children testified that they saw Deputies Pittman and Hall behind the Summerses' vehicle with guns drawn. Taylor observed eight occupants in the vehicle, IAD Report [68-5] at 3, and one child heard him tell the deputies that there were children present. All four windows were rolled down throughout the encounter.

According to Casey, Jonathan was compliant with the deputies' commands, and she did not see him drop his hands after being instructed to raise them. Casey and three of the children testified that while the vehicle was stationary on the side of the road, Deputies Pittman and Hall fired two to three gunshots at the car. Casey and one child claim they were grazed by the bullets. Casey claims that *after* the shots began, she instructed Jonathan to drive away; as he did, he struck Deputy Taylor's patrol vehicle.[1]

Deputies Pittman and Hall fired additional shots as Jonathan drove off. Then, Deputies Pittman, Hall, and Williams began a high-speed pursuit of the vehicle. According to Casey, the deputies never abandoned their pursuit and were "behind [their car] the entire time." Casey Dep. [68-1] at 48–49. The chase ended when Jonathan ran a red light and was struck by a Nissan

---

[1] Defendants say Casey's testimony that she told Jonathan to leave is inadmissible hearsay. *See* Defs.' Reply [74] at 8. But the statement would likely fall under Federal Rules of Evidence 803(1)–(3). Even if those exceptions do not apply, this was not the only evidence regarding the timing of the shots.

Titan pick-up truck. Casey and the children all sustained injuries in the crash; some were serious.[2]

On February 4, 2020, Casey (individually and as the mother and next friend of her six minor children) filed this lawsuit against Hinds County and Deputies Williams, Pittman, Hall, and Taylor in their individual and official capacities under 42 U.S.C. § 1983. The Court previously dismissed Plaintiffs' illegal-search claim under Rule 12(b)(6), *see* Dec. 21, 2020 Order [19], leaving Fourth and Fourteenth Amendment claims for excessive force. At the close of discovery, Defendants moved for summary judgment on the remaining claims. The Court has both personal and subject-matter jurisdiction over the dispute.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The

---

[2] Defendants vehemently disagree with these facts. For example, they deny knowing the car was full of children and further deny that Hall and Pittman fired shots before Jonathan attempted to flee. According to them, they shot at the car because Jonathan "nearly [ran] over Deputy Taylor" and they feared for his life. Defs.' Mem. [60] at 2. They also note inconsistencies with Plaintiffs' accounts and urge the Court to reject Plaintiffs' testimony.

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075.

III. Analysis

Under § 1983, "[a] police officer who, acting under color of state law, subjects a United States citizen to a deprivation of his constitutional rights is liable for damages to the injured party." *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998) (citing 42 U.S.C. § 1983).  Plaintiffs say Defendants violated their Fourth and Fourteenth Amendment rights by using excessive force during and after the traffic stop.

A. Individual-Capacity Claims against the Deputies

The deputies assert that qualified-immunity bars the individual-capacity claims for excessive force.  Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established

statutory or constitutional law of which a reasonable person would have known." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) (quoting *Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 418 (5th Cir. 2018)).

Once a defendant raises qualified immunity, "the burden . . . shifts to the plaintiff to rebut the qualified immunity defense." *Cherry Knoll*, 922 F.3d at 318. That requires showing "that the state actor (1) violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Can. Hockey, L.L.C. v. Marquardt*, No. 20-20530, 2022 WL 252186, at *3 (5th Cir. Jan. 26, 2022) (citing *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)). On the second point, "the salient question . . . is whether the state of the law [at the time] gave [the defendants] fair warning" that their alleged conduct violated the federal standard. *Amador v. Vasquez*, 961 F.3d 721, 729 (5th Cir. 2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *accord Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc). "The rule must [have been] 'settled law,' which means . . . dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations omitted) (first quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); then quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); and then quoting *id.* at 742).

As the Court noted in an earlier order, "only one constitutional amendment can apply to Plaintiffs' excessive-force allegations." Order [19] at 6 n.1 (citing *Graham v. Connor*, 490 U.S. at 386, 394 (1989)). The parties agree that the Fourth Amendment controls everything that happened during the traffic stop, and Plaintiffs offer no authority suggesting that the Fourth Amendment continued to control after Jonathan fled the stop. The Court finds that it is more consistent with the facts and the law to apply the Fourteenth Amendment to the events once Jonathan fled the scene.

5

1.   Fourth Amendment (Excessive Force While Seized)

"To bring a § 1983 excessive[-]force claim under the Fourth Amendment, a plaintiff must first show that she was seized." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham*, 490 U.S. at 388). This element is not disputed during the traffic stop. "Next she must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.* (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Defendants contest all three elements.

a.   Injury

"A plaintiff alleging an excessive force violation must show that she has suffered 'at least some injury.'" *Id.* at 397 (quoting *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). Defendants say none of them did.

> "[A]lthough a de minimis injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (alterations in original) (citations and quotation marks omitted). "Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold, and, conversely, objectively reasonable force will result in de minimis injuries only." *Id.* (citation and quotation marks omitted). "Consequently, 'only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment.'" *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996)). That is, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (citations and quotation marks omitted).

*Byrd v. Cornelius*, 52 F.4th 265, 273–74 (5th Cir. 2022).

Plaintiffs' injury claims are most convincingly addressed to Deputies Pittman and Hall, the two that fired their guns during the initial stop. There is competent evidence that the children were screaming and crying, and Casey and her son, Andras Bridges, claim they were grazed by

6

the deputies' bullets.  *See* Casey Dep. [68-1] at 67; Bridges Dep. [68-2] at 22.  Bridges's sworn testimony that he was grazed satisfies the injury element as to him.  Casey's grazing allegation is less clear because she bases her testimony on what the doctors told her.  *See* Casey Dep. [68-1] at 67.  While Plaintiffs may not rely on unredeemable hearsay, this argument was first raised in Defendants' reply, and it is not yet clear that the evidence cannot be offered in an admissible form at trial.  *See* Fed. R. Civ. P. 56(C)(2).

Regardless, each Plaintiff claims physical injuries during the ensuing traffic accident (many of which were severe).  They suggest that those injuries support the Fourth Amendment claim because they "were the result of . . . Jonathan having to flee from an unprovoked hail of bullets fired at him and his family while sitting in his vehicle not posing a threat to anyone."  Pls.' Mem. [69] at 20–21.  In other words, the shots Pittman and Hall fired during the seizure proximately caused the post-seizure injuries Plaintiffs sustained when Jonathan wrecked the vehicle.  Defendants factually dispute the extent of some of those injuries, but if the jury believes the force was unreasonable, then each Plaintiff has created a fact question whether they sustained "at least some injury."  *Flores*, 381 F.3d at 357.

The main question is whether the accident-related injuries count.  Defendants say they don't because those injuries do not flow "directly and only from the gunshots fired by Deputy Pittman or Deputy Hall."  Defs.' Mem. [60] at 18.  As they note, the accident happened after Jonathan ran a red light.  But the Fifth Circuit—sitting en banc—has "interpreted the [directly and only language] only to prohibit compensation for injuries caused by the use of *reasonable* force."  *Gutierrez v. City of San Antonio*, 139 F.3d 441, 450 n.8 (5th Cir. 1998) (emphasis added) (citing *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc)).

7

Thus, to recover on an excessive-force claim, a plaintiff "need not prove that the [o]fficers' excessive force was the sole cause of" injury. *Goode v. Baggett*, 811 F. App'x 227, 231 (5th Cir. 2020). Instead, "[P]laintiffs can—subject to qualified immunity—generally recover damages that are proximately caused by any Fourth Amendment violation." *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1548 (2017). In other words, plaintiffs may recover if they show the force was a "contributory cause." *Goode*, 811 F. App'x at 231 (quoting *Gutierrez*, 139 F.3d at 450 n.8). Whether it was a contributory cause presents a question of fact. *Gutierrez*, 139 F.3d at 450 n.8 (holding that appellate court lacked jurisdiction to consider whether officer was entitled to qualified immunity because fact question existed whether the force contributed to cause injury).[3]

The jury must factually decide whether Deputies Pittman and Hall contributed to proximately cause the injuries sustained in the post-flight accident by firing the shots that allegedly led to the flight. As for Deputies Williams and Taylor, the Court elects to address the Fourth Amendment claim against them when determining whether they violated clearly established law.

b.  Reasonableness of Force

In assessing the reasonableness of the force used, the Court examines "three non-exclusive considerations . . . including 'the severity of the crime at issue, whether the suspect

---

[3] Defendants cite *Wilson v. Thomas*, a factually similar case where the plaintiff fled an alleged use of excessive force and then wrecked. *See* Defs.' Mem. [60] at 19 (citing No. H-07-1104, 2008 WL 2491650 (S.D. Tex. June 18, 2008)). The court held that the force used was not unreasonable and then alternatively noted that the plaintiff failed to demonstrate "that he suffered an injury as a result of the alleged use of deadly force." *Wilson*, 2008 WL 2491650, at *11 n.8. But nothing in *Wilson* suggests the plaintiff was injured in the accident, so the problem was not that the plaintiff failed to establish a causal link between the force and his injuries but instead that the plaintiff suffered no injuries at all. Regardless, the force need not be the sole cause. *Goode*, 811 F. App'x at 231.

poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Where, as here, "an officer uses deadly force, its reasonableness turns primarily on whether 'the officer ha[d] probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or others.'" *Wilson v. City of Bastrop*, 26 F.4th 709, 713 (5th Cir. 2022) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 488, 493 (5th Cir. 2001)). Finally, "reasonableness under the Fourth Amendment should frequently remain a question for the jury." *Lytle v. Bexar County*, 560 F.3d 404, 411 (5th Cir. 2009) (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)).

Defendants premise their reasonable-force argument on their own accounts of the events, discounting Plaintiffs' versions in various ways. *See, e.g.*, Defs.' Mem. [60] at 8 (stating that "there is no clear evidence" supporting Plaintiffs' allegations). While a jury could certainly believe Defendants' testimony, the Court may not weigh the evidence under Rule 56 and must instead consider it in the light most favorable to Plaintiffs. *See Reeves*, 530 U.S. at 150.

In that light, Jonathan was wanted on misdemeanor warrants and a single felony warrant for fleeing/alluding—relatively minor, non-violent charges. While Defendants claim they fired after Jonathan began to flee because he was about to run over Deputy Taylor, Casey testified that Jonathan was compliant and that Deputies Pitman and Hall fired before Jonathan fled. Casey Dep. [68-1] at 44. If the jury accepts Plaintiffs' facts, then Deputies Pittman and Hall began shooting into a car filled with children before Deputy Taylor (or anyone else) was in danger. Under *Graham* and *Lytle*, there is a question of fact as to the reasonableness of the force Deputies Pittman and Hall deployed at the traffic stop.

9

        c.        Clearly Established Law

The final question is "whether the state of the law [at the time] gave [Defendants] fair warning" that their alleged conduct violated the federal standard. *Amador*, 961 F.3d at 729. The plaintiff "bear[s] the burden to rebut [the] qualified immunity defense and demonstrate that there were [constitutional] rights that were clearly established at the time of the constitutional violation." *Keller v. Fleming*, 952 F.3d 216, 221 (5th Cir. 2020). "To show the law is clearly established, a party must 'identify a case where an officer acting under similar circumstances . . . was held to have violated'" the plaintiff's federal rights. *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Moreover, "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citations omitted, punctuation altered).

Starting with Deputies Williams and Taylor, neither officer discharged a weapon, and Plaintiffs have not identified any legal authority suggesting that their conduct violated clearly established law. *Nerio*, 974 F.3d at 575. They cite no cases as to Williams and only one distinguishable case related to Taylor. *See* Pls.' Mem. [69] at 36–38 (citing *Petta*, 143 F.3d 895). Williams and Taylor are entitled to summary judgment on the Fourth Amendment excessive-force claim.

As for Deputies Pittman and Hall, both allegedly used deadly force. Fifth Circuit precedent "holds that the use of deadly force against a fleeing suspect who poses [an] insufficient [risk of] harm to others violates clearly established law." *Edwards v. Oliver*, 31 F.4th 925, 930–31 (5th Cir. 2022) (citing *Lytle*, 560 F.3d at 417–18). But according to Defendants:

> The material facts here—(1) Jonathan's failure to heed Deputy Williams's commands to not put the vehicle in drive and to stop; (2) Officer Taylor's position

>near the front of [the Summerses'] vehicle; (3) and the brief period of time it took for Deputy Pittman and Deputy Hall to perceive and react to the direction of Jonathan's vehicle — are not sufficiently analogous to the facts of any other case finding excessive force such that Deputy Pittman and Deputy Hall would have been "on notice" that their conduct was unconstitutional.

Defs.' Mem. [60] at 31.

As noted, the Court may neither ignore nor weigh Plaintiffs' competent record evidence. And that evidence creates a question of fact as to all three of the factual assertions upon which Defendants rely. There is likewise a factual dispute whether the officers knew the car was loaded with other passengers, including six children. As this Court previously noted, "the Fifth Circuit has twice found excessive-force violations where officers fired at vehicles or dwellings holding suspects and innocent third parties" under circumstances substantially similar to those asserted in this case. *Summers v. Hinds Cnty.*, 508 F. Supp. 3d 124, 132 (S.D. Miss. 2020) (citing *Petta*, 143 F.3d 895; *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986) (finding that suspect's four-year-old daughter stated an excessive-force claim because officers knew, or should have known, that she was in her father's trailer when officers shot into it)). Plaintiffs cite additional authority on this point, and the Court finds they have met their burden to overcome qualified immunity at the summary-judgment stage. *E.g.*, Pls.' Mem. [69] at 17–18 (citing *Lytle*, 560 F.3d at 413–17). The motion is denied as to the Fourth Amendment claims against Deputies Pittman and Hall.

        2.        Fourteenth Amendment (Post-Flight Use of Excessive Force)

A Fourteenth Amendment excessive-force claim covers any excessive force applied when Plaintiffs were not seized within the meaning of the Fourth Amendment. Plaintiffs suggest that the deputies' "use [of] deadly force" after Jonathan began driving away from the traffic stop and their decision to chase him violated Plaintiffs' Fourteenth Amendment rights. Pls.' Mem. [69] at 26.

Police chases give rise to "mid-level-culpability due process claims" under the Fourteenth Amendment. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 591 (5th Cir. 1999) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)). To prevail on such claims, Plaintiffs must show the deputies' "actions caused them [some] injury, were grossly disproportionate to the need for action under the circumstances[,] and were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Petta*, 143 F.3d at 902.

"[T]he 'shock the conscience' standard is satisfied where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (quoting *Lewis*, 523 U.S. at 849–50). "But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" *Lewis*, 523 U.S. at 853 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 (1986)).

Deputy Taylor neither fired his weapon nor joined in the pursuit when Jonathan fled (Jonathan hit his car as he was pulling off). Absent any evidence that Deputy Taylor applied force to Plaintiffs after Jonathan fled the scene, the Fourteenth Amendment claim against Deputy Taylor is dismissed under Rule 56. Similarly, Williams did not shoot at the car, and Plaintiffs have not shown that his actions related to the shooting violated clearly established law. He too is entitled to summary judgment on that aspect of the Fourteenth Amendment claim.

Deputies Pittman and Hall did fire their guns at the fleeing vehicle. Viewing the evidence in the light most favorable to Plaintiffs, those deputies knew there were children inside but shot anyway as Jonathan was leaving the scene. These facts are sufficiently similar to those

in *Petta* to find that the conduct violated Plaintiffs' clearly established Fourteenth Amendment due-process rights. *See generally Petta*, 143 F.3d 895 (holding that officer violated plaintiff's due-process rights by firing into fleeing vehicle with child inside).

Turning to the car chase, the Supreme Court has held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." *Lewis*, 523 U.S. at 854. Plaintiffs point to "no proof that [the deputies] intended to harm" them by merely chasing the fleeing car. *O'Neal v. Cazes*, 257 F. App'x 710, 713 (5th Cir. 2007) (affirming summary judgment). Absent such proof, Deputies Williams, Pittman, and Hall are entitled to summary judgment on the Fourteenth Amendment claim related strictly to the car chase.

B. Claims against Hinds County

Plaintiffs admit they cannot succeed on a claim for municipal liability under *Monnell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Instead, they say Hinds County is liable for the actions of Deputies Pittman and Hall because it ratified their conduct.

"If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Young v. Bd. of Supervisors of Humprheys Cnty.*, 927 F.3d 898, 903 (5th Cir. 2019) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). But the Fifth Circuit has "limited the theory of ratification to extreme factual situations." *Id.* (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)). Another district court in this circuit has concluded that "a municipality isn't liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as 'that version did not show that the deputies' actions were manifestly

13

indefensible.'" *Allen v. City of Galveston*, No. 06-467, 2008 WL 905905, at *8 (S.D. Tex. Mar. 31, 2008) (quoting *Coon*, 780 F.2d at 1162).

Plaintiffs say Hinds County ratified Deputies Pittman's and Hall's acts when it failed to discipline them for their conduct during the traffic stop. But, as Defendants point out, Plaintiffs fail to demonstrate "that the Sheriff was provided evidence that the Deputies['] conduct was manifestly indefensible." Defs.' Reply [74] at 23. And the deputies' post-incident statements do not support such a finding.

In narratives provided to the Hinds County Sheriff's Office, Deputies Pittman, Taylor, and Williams all explained that Jonathan drove off from the traffic stop, nearly hitting Deputy Taylor, before Pittman and Hall opened fire. Pittman Narrative [68-14] at 1 ("Summer[s] . . . drove fast toward Deputy Taylor causing Deputy Taylor to immediately jump from between two vehicles to avoid Deputy Taylor getting hit and ran over. Deputy Pittman and Deputy Hall immediately drew out their county issued 9mm Glock 17 weapon[s] and fired at the runaway vehicle trying to at least blow the tires out to slow the vehicle down."); Taylor Statement [68-12] ("Jonathan Summers attempted to hit Deputy Taylor. At that time Deputy Taylor moved out of the way when shot[s] started firing in Dep. Taylor['s] direction."); Williams Narrative [68-8] ("Summers . . . put his car in gear, turned the steering hard right, and accelerat[ed] his vehicle . . . . During the vehicle accelerating, Deputy Taylor took evasive action by sprinting out of the way of the vehicle moving towards him. In fearing for his safety, Deputy Pittman and Deputy Hill, simultaneously, fired their duty firearms into the vehicle to prevent serious injury or death to Deputy Taylor."). Pittman explained that he "and Deputy Hall w[ere] not aware that kids were inside of the vehicle until Deputy Williams yelled after the car drove off and the shots were fired." Pittman Narrative [68-14] at 1.

As noted, there are fact questions regarding those points, and Plaintiffs' evidence is not airtight. Because the deputies' accounts do not show their conduct was "manifestly indefensible," Hinds County's failure to discipline them following the shooting did not ratify their conduct for purposes of § 1983 liability. *Coon*, 780 F.2d at 1162. Hinds County is entitled to summary judgment.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion for Summary Judgment [59] is granted in part and denied in part. It is granted as to all claims against Deputies Williams and Taylor in their individual capacities and the Fourteenth Amendment car-chase claims against Deputies Pittman and Hall. It is also granted as to all claims against Hinds County. The motion is denied as to the Fourth and Fourteenth Amendment claims against Deputies Pittman and Hall related to those deputies shooting at Plaintiffs' vehicle. The parties shall contact Courtroom Deputy Shone Powell within 10 days of this Order to reset the pre-trial conference.

**SO ORDERED AND ADJUDGED** this the 12th day of January, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE